UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **International Union of Operating,** ) | **CASE NO. 1:14 CV 1673** |
| **Engineers, Local 18,** ) | |
| Plaintiff, ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **Ohio Contractors Association,** ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

### Introduction

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 42) and Plaintiff's Motion for Summary Judgment (Doc. 49). For the following reasons, defendant's motion is GRANTED and plaintiff's motion is DENIED.

### Facts

Plaintiff International Union of Operating Engineers, Local 18 (hereafter, plaintiff or the Union) filed this Complaint against defendant Ohio Contractors Association (hereafter, defendant or OCA) in the Cuyahoga County Court of Common Pleas. The matter was removed on federal question jurisdiction. A First Amended Complaint was filed which alleges that

1

plaintiff is a labor organization representing operating engineers who operate the equipment, technology, and machinery used in all aspects of Ohio's building, construction, and heavy highway industry. Defendant is a business and trade association representing the interests of a constituency of employers engaged in the heavy highway and utility construction industry. For over 40 years, these parties have negotiated a continuous series of collective bargaining agreements commonly referred to in the industry as the Highway Heavy Agreement. The current agreement was effective May 8, 2013 (hereafter, the CBA).

Paragraph 30 of the CBA, entitled in the Index as "New Equipment Rate," states:

Exhibit 'A' covering wage rates and classifications attached hereto, is made a part of this Agreement. If equipment within the jurisdiction of the International Union of Operating Engineers is used by an Employer and there is not an appropriate classification listed under the wage schedule herein, either party may request the other party to meet to negotiate a new classification and rate of pay. ... If no agreement can be reached on a new rate, the dispute will be referred immediately to Step 4 of the Grievance Procedure outlined in Article XV, Paragraph 108...

Exhibit A to the CBA (entitled Wage Classifications and Rates of Pay) identifies and provides specific alphabetically identified rates of pay for operating engineers employed to assemble, operate, maintain, and repair all types of equipment, technology, and machinery used in Ohio's heavy highway and utility construction industry. Certain types of equipment are specifically identified under the title, "Classification." (First Am. Compl.; CBA)

Paragraph 108 states, "Should a dispute arise among any of the parties, (Employee, Employer, Association and/or Union) to this Agreement as to its meaning, intent or application of its terms, the dispute will be settled in accordance with the following grievance procedure:..." Three intermediary grievance steps are set forth, culminating in final and binding arbitration at Step 4.

2

Negotiations for the current CBA occurred in April and May 2013. At that time, the Union addressed adding "new equipment," i.e., the Hydro Vac/Excavator, to be included in the CBA. That equipment was not eventually included in the CBA. The Union did not attempt to negotiate Brokk type remote controlled equipment and machinery during those negotiations. (Richard Dalton depo., Exs. 6, 7)

Brokk machinery is not specifically listed in the CBA. (Doc. 41 Ex. 2; Mark Potnik depo.) By letter of January 29, 2014, the Union requested that the OCA meet and negotiate a classification and rate of pay for the "Brokk type/Remote Controlled Equipment." The Union invoked Paragraph 30 of the CBA. (Doc. 41 Ex. 3) The OCA denied the Union's request to negotiate a classification and rate of pay for the Brokk equipment. (Dalton depo. 55) On February 11, 2014, the Union served written notice upon OCA stating that in accordance with Paragraph 30 of the CBA[1], it was submitting the parties' dispute regarding the classification and rate of pay for the Brokk equipment to arbitration pursuant to Paragraph 108, Step 4 of the CBA. When the OCA denied the Union's request, the Union filed this action alleging a breach of the CBA.

This matter is now before the Court upon the parties' cross Motions for Summary Judgment. The motions will be addressed together.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376,

---

[1] Defendant states Paragraph 30 had never before been used.

378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant

summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

Defendant argues that the CBA does not provide for arbitration regarding the Brokk equipment and the Union is actually merely attempting to obtain exclusive jurisdiction over that equipment. Plaintiff argues that the dispute concerning the proper classification and wage rate of the Brokk equipment is substantively arbitrable under the CBA.

Federal courts generally give considerable deference to the arbitration process. *Plumbers & Pipefitters Local Union No. 572 Health and Welfare Fund v. A & H Mechanical*, 100 Fed.Appx. 396, 399 (6th Cir. 2004). But the general rule does not apply where the question at issue exceeds the scope of authority delegated to arbitration by the parties' agreement. *Id*. Arbitration remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id*. (quoting *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84, 154 L.Ed.2d 491 (2002)).

Before compelling a party to arbitrate, the district court must decide whether the dispute is arbitrable. *Trimas Corp. v. Meyers*, 572 Fed.Appx. 347, 354 (6th Cir. 2014). The court must determine that (1) a valid agreement to arbitrate exists between the parties, and (2) the specific dispute falls within the substantive scope of the arbitration agreement. *Id*. (citing *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2068 n.2, 186 L.Ed.2d 113 (2013)) (observing that gateway matters such as whether an arbitration clause applies to the controversy is presumptively for the district courts to decide); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 156 L.Ed.2d 414 (2003). It is for the courts to decide whether an arbitration clause in a concededly binding contract applies to a particular type of controversy. *Howsam*, 537 U.S. at 84.

Defendant argues that because the First Amended Complaint alleges that it breached the CBA when it denied the Union's request to arbitrate under Paragraph 30, the Union must establish, in order to survive summary judgment, that Paragraph 30 required the OCA to negotiate and arbitrate. Defendant asserts that it does not.

Paragraph 30, entitled New Equipment Rate, only applies, defendant contends, when the equipment at issue is 1) new equipment, 2) within the jurisdiction of the Union, 3) used by an Employer, and 4) with no appropriate classification under the wage schedule of the CBA. Defendant contends the Brokk equipment is not within the scope of the paragraph.

First, defendant asserts that the Brokk equipment is not new. Defendant points out that the First Amended Complaint does not allege that it is new. Richard Dalton, Local 18's Business Manager, testified that the Union had been aware that this equipment was being used for excavating as early as 1990 (Dalton depo. 52) and being used in the highway heavy industry in Ohio at least by 2011. (*Id.* 62) Dalton also testified that although the Union was aware during the 2013 CBA negotiations that the Brokk equipment was being used in this industry in Ohio, it chose not to propose adding it in its list of new equipment (*Id*. 63), and that it did not have any new evidence of its use in Ohio after the negotiations had concluded which would have prompted the request to meet and negotiate. (*Id*. 65-66)

Second, defendant asserts the Brokk equipment is not within the jurisdiction of the Union. Paragraph 4 of the CBA lists the equipment within the Union's jurisdiction and does not include the Brokk equipment. While that paragraph refers to "all like equipment," Brokk equipment is not "like equipment" because it is unique. In particular, Dalton testified that it is not operated in the typical way used by operating engineers because there is no cab for an

6

operator to sit but it is operated by remote control which makes a big difference. (Dalton depo. 71, 74-75)

Third, defendant asserts that the Union cannot establish that there is not an appropriate classification for the Brokk equipment in the CBA. While plaintiff contends that the Brokk equipment is "like" a Hoe, "Hoes (all types)" are already listed in Exhibit A to the CBA. Thus, if Brokk equipment is a like a Hoe, it would already have a classification and pay rate in the CBA and a Paragraph 30 request to negotiate would be unnecessary.

Fourth, defendant maintains the Brokk equipment was not used by an Employer. Paragraph 3 defines an Employer: "All members of the Labor Relations Division of the Ohio Contractors Association, and any person, firm or corporation who as an Employer becomes signatory to this Agreement, shall be bound by all terms and conditions of this Agreement..." Thus, in order to qualify as an Employer, the company must be either a member of the Labor Relations Division of the OCA or become a signatory to the Agreement. The Union must demonstrate that one of these used the Brokk equipment before its request to negotiate and arbitrate. The Union cannot do so.

Plaintiff argues that the Brokk dispute is clearly substantively arbitrable under Paragraph 30 which governs disputes that arise regarding equipment that is 1) within the jurisdiction of the Union, 2) used by an OCA employer, and 3) not already classified and identified in the CBA.

Pointing to Mark Potnick's (OCA's Director of Labor Relations and Safety Affairs) deposition testimony, plaintiff contends that there is no dispute that OCA contractors (in this instance, McNally-Kiewit) have employed Union members to operate Brokk machinery on construction projects within the scope of the CBA (Potnick depo. 84-86) Plaintiff's

representative Dalton also avers, "In 2011 McNally -Kiewit ECT JV, an OCA signatory contractor, utilized a Brokk machine on a project with the scope of the [CBA].  On this project, Local 18 members were assigned to operate the Brokk machine.  This was the first time that Brokk machines were used by an OCA contractor on a project within the scope of the [CBA]." (Dalton aff.)

Nor is there any dispute, plaintiff contends, that there is no rate of pay or classification for Brokk machinery in the CBA. (*Id.* 91-92)  In fact, the phrase "remote controlled equipment" and/or Brokk are not mentioned anywhere in the CBA. Consequently, plaintiff asserts, given that OCA contractors have used the Brokk machinery on projects covered by the CBA even though there is no corresponding wage rate for the equipment listed, to argue that the equipment is not within the jurisidiction of the Union misapplies the law and facts.

Plaintiff contends that whether the equipment is within the jurisdiction of the Union concerns the merits of the dispute, not whether the claim is substantively arbitrable, and for the arbitrator to decide. Even assuming it goes to arbitrability, plaintiff contends that the Brokk equipment is clearly within the Union's jurisdiction. Referring to Paragraph 4 of the CBA, plaintiff asserts that by including the term "all like equipment" the jurisdiction of the Union under that paragraph extends to include equipment that is not specifically named but nonetheless similar to equipment that is identified in the CBA. Plaintiff contends that the evidence shows that the Brokk machinery includes "like" Shovels and Hoes and so is within the Union's jurisdiction as contemplated by Paragraph 4. Plaintiff points to the deposition testimony of Mark Sterling, Chair of the OCA's Labor Executive Committee, and Mark Potnick, OCA's Director of Labor Relations, who both stated that the only difference between a Hoe traditionally utilized by OCA

8

contractors and a Brokk machine is the fact that the Hoe has an operator's cabin attached to the housing while the Brokk does not. (Potnick depo. 58-64, Sterling depo. 46-49) Both testified that the Hoes and Brokk machines perform identical jobs in a nearly identical fashion. (*Id*.) As such, the Brokk machines are "like" the Shovels and Hoes identified in Paragraph 4 and, thus, within the Union's jurisdiction.

Additionally, plaintiff asserts that a 1990 memorandum issued by the Union's parent organization shows that the Brokk machines fall within the Union's jurisdiction. The Union received that memorandum from the International Union of Operating Engineers (IUOE) advising that the Brokk machinery was beginning to appear on a number of highway and bridge construction projects in New York and New Jersey. (Doc. 49 Ex.1) According to the memorandum, the operation, maintenance, and repair of Brokk machines "clearly falls within the work covered by [IOUE's] Charter and Decision of Record of 1907, which affirms [IUOE's] original craft jurisdiction over the operation of power driven equipment." (*Id.*) The 1990 memorandum further states that the operation of Brokk machines on each of the New York and New Jersey highway and bridge jobs at issue was assigned to operating engineers. (*Id.*)

Finally, plaintiff asserts that it negotiates satellite agreements with KT-Grant, Inc., a supplier of specialized remote and robotic equipment services to the steel and related industries. KT-Grant manufactures several different types of remote controlled equipment which it utilizes in servicing its industrial clients.  This equipment is "nearly identical in appearance" to the Brokk machinery. Pursuant to the terms of a collective bargaining agreement with the Union, KT-Grant employs operating engineers to repair, maintain, and operate all of its equipment. (Dalton aff.)

For the following reasons, the Court finds that summary judgment is warranted in defendant's favor and denied as to plaintiff because, at a minimum, the evidence does not show that the Brokk equipment is new equipment within the jurisdiction of the Union.[2] Therefore, defendant did not violate Paragraph 30 by refusing to meet to negotiate a new wage classification.

The First Amended Complaint alleges that the parties' dispute regarding the classification and rate of pay for the Brokk equipment is referable to arbitration and defendant breached the CBA by refusing to meet and then arbitrate when plaintiff served written notice in accordance with Paragraph 30 to do so. The Court agrees with defendant that plaintiff cannot meet its burden in satisfying the four elements required by Paragraph 30.

In the "Index" found at the beginning of the CBA, Paragraph 30 is identified as "New Equipment Rate." Thus, the Court must first determine whether Brokk equipment is "new equipment." If not, it need not go further. Mark Potnick, defendant's Director of Labor Relations explained in his deposition that the OCA denied the Union's request to meet and negotiate over the Brokk equipment because it is not new equipment as required under Paragraph 30 and in the negotiations leading to the CBA, while the Union attempted to get jurisdiction over the Hydro-Excavators, it did not mention the Brokk equipment. (Potnick depo. 119) The evidence shows that it is not new equipment.[3]  As discussed above, the Union's representative testified that

---

[2] On this basis, the Court need not proceed to whether an Employer "used" the equipment. Further, as discussed below, it is not disputed that there is no classification for Brokk equipment.

[3] The First Amended Complaint does not allege that the Brokk equipment is "new equipment."

10

Brokk equipment is not new equipment because it has been around for 30 years. (Dalton depo. 39). He testified that Brokk equipment was being used for excavating as early as 1990. (*Id*. 52) and in the highway heavy industry in Ohio by at least 2011. (*Id.* 62). During negotiations in 2013 for the CBA, the Union representatives had knowledge that the Brokk equipment was being used in this industry in Ohio and chose not to propose adding it in its list of "new" equipment. (*Id*. 63). He testified, "We chose not to propose it during these negotiations.  We didn't need to at that time... We just didn't do it because we knew we had paragraph 30, and we could invoke any time we so chose."  (*Id.*) Nor did the Union have new evidence that Brokk equipment was used in Ohio after negotiations concluded which could explain or have prompted a later request to add the Brokk equipment to the CBA. (*Id.* 65-66). On his basis, the Court agrees with defendant that the Brokk equipment was not "new" in 2014 when the Union requested to negotiate and then arbitrate a classification and rate of pay.

Plaintiff asserts that defendant is not entitled to summary judgment because there is an issue of fact as to whether the equipment was new.  As to its own motion, plaintiff asserts that, to the extent Paragraph 30 actually requires the equipment to be new, it was.[4] Plaintiff asserts that defendant's representatives could not define what constitutes new equipment. But, Potnick did testify as to why the equipment was not new: "The request says new.  They've been in operation and they've been used for sometime prior to even our negotiations where other equipment was brought to the table. So it wasn't new in relationship to this request."  (Potnick depo. 140-141)

---

[4] In its motion, plaintiff repeatedly refers to Paragraph 30's application to "unclassified new equipment," "disputes concerning new equipment," and "procedures regarding new equipment."  In its reply, plaintiff seems to assert that whether the equipment is new is not a requirement of Paragraph 30.

Likewise, Mark Sterling testified that new equipment is that introduced to the market between negotiation years, i.e, after the effective date of the current CBA.  (Sterling depo. 41, 43, 61,63)  Thus, as defendant asserts, to allow the stability provided by the CBA to be destroyed by issues that could have been addressed during past negotiations would counter the goal of labor relations and the goal of the parties to the CBA.  As such, Sterling testified that "That's what Paragraph 30 is for, and generally, in every negotiation, the Union brings a list of equipment they would like added to the contract. If I recall, this was shortly after we just finished negotiations on the last contract and it should have been brought up at that time."  (*Id.* 61)[5] While plaintiff's representative defines new equipment as that which was "new to the industry in the State of Ohio" (Dalton depo. 65), the evidence discussed immediately above shows that the Brokk equipment was not new.  Plaintiff also contends that the term "new equipment" is found only in the Index and its import is, therefore, minimal given that the Index is not negotiated by the parties but is added into the CBA afterward.  Thus, plaintiff asserts that the meaning of the term is found in the other requirements of Paragraph 30. But, the Union itself used the term "new equipment" when negotiating for the CBA when it proposed adding the Hydro-Excavator.  (Dalton depo. 59)

Because the evidence shows that the Brokk equipment was not new in 2014 when the Union requested to meet and negotiate a classification and rate of pay, Paragraph 30 is not applicable.

Assuming the equipment was new, the next issue is whether the equipment was within

---

[5]  Accordingly, it would appear that plaintiff may raise the issue of the Brokk equipment during the next round of bargaining negotiations.

the jurisdiction of the Union. Paragraph 4 is entitled in the Index as "Jurisdiction, Work." The first paragraph of Paragraph 4 states:

> The Employer will employ Operating Engineers for the erection, operation, assembly and disassembly, and maintenance and repair of the following construction equipment regardless of motive power:  Air Compressors, Backfillers, Batch Plants, Boilers, Cableways, Connection Machines, Derricks, Finishing Machines, Truck-Crawler and Locomotive Cranes, Concrete Mixing Plants, Shovels, Hoes Keystone Graders, Paving Mixers, Piledriving Machines, Tractors, Le Tourneau and other types of Scoops, End Loaders and all like equipment within the jurisdiction assigned to the Union by the American Federal of Labor.

Paragraph 4 defines the Union's jurisdiction, and Brokk equipment is not included in that paragraph.  Nor is it included elsewhere in the CBA, including the Exhibit A classifications. The evidence does not show that this equipment is within the jurisdiction of the Union. Plaintiff argues that at the very least, there is an issue of fact.[6]  Again, the Court disagrees.

Instead of addressing the language of Paragraph 4, the Union refers to its "craft jurisdiction." According to plaintiff's representatives, "Local 18's craft jurisdiction covers any machine- regardless of whether it is listed in the [CBA]- with motive power by virtue of an engine that performs work by moving material, destroying material, demolishing material, or hoisting material.  In this manner, Local 18's craft jurisdiction is not specifically limited by Paragraph 4 and Exhibit A, which identifies wage classifications for specific pieces of

---

[6] As discussed above, plaintiff also argues that whether the equipment is within the jurisdiction of the Union is for the arbitrator to decide as it concerns the merits of the dispute, and does not go to whether the claim is substantively arbitrable.  The Court agrees with defendant that the issue goes to arbitrability given that defendant had no duty to negotiate or arbitrate if Paragraph 30 did not apply (which would include that the equipment be within the Union's jurisdiction.)  Also, to accept plaintiff's  assertion would mean that the OCA would have to arbitrate over any piece of equipment even if such equipment is within the jurisdiction of another union.

13

equipment." (Doc. 50 at 8)[7] Rather, plaintiff asserts, Paragraph 4 serves as a "start" of the Union's craft jurisdiction because it provides that any "like equipment" is also within its jurisdiction.  In this regard, plaintiff contends that the Brokk equipment "is exactly the type of machinery contemplated by the contract as 'like equipment' found within the scope of the Union's craft jurisdiction."  (Doc. 50 at 9)  Plaintiff maintains that defendant has acknowledged that other types of equipment within the Union's jurisdiction as provided by the CBA, such as concrete pump trucks and cranes, have remote-controlled counterparts, which are separately identified, but are also covered by the CBA as being within the Union's jurisdiction. Additionally, plaintiff asserts that the Brokk equipment is almost exactly "like" the excavators which have been recognized as being within the Union's craft jurisdiction. Just like an excavator, Brokk equipment contains an engine body and boom, which may support any number of attachments.  The only material difference is that Brokk equipment lacks a cab and is remotely controlled.  Both come in various size configurations and perform the same work and provide the same function on jobsites. Plaintiff points out that defendant's representative stated that if Brokk equipment was not available, an operating engineer would be used to run an excavator to perform the same work. As such, plaintiff argues, "just like concrete pump trucks and cranes and

---

[7] Judge Polster, in the related case, involving the Hydro-Excavator, stated, "Paragraph 4 of the Agreement defines the jurisdiction of the Union."  (Case No. 1:14 CV 1672, Doc. 11 at 5) Judge Polster granted defendant's motion to dismiss and the case is still pending on appeal in the Sixth Circuit.  Judge Polster decided that Paragraph 30 did not compel arbitration because the Hydro-Excavator was not listed in Paragraph 4 and so not within the Union's jurisdiction.  Although the parties argued the case on October 15, 2015, the Sixth Circuit has not issued an opinion. The Sixth Circuit's decision would also impact plaintiff's argument that the issue of whether or not the equipment is within the Union's jurisdiction involves the merits of the dispute for the arbitrator to decide and does not go to whether the dispute is substantively arbitrable.

their remote-controlled iterations, Brokk equipment constitutes equipment which is "like" excavators, but deserving of a classification and wage rate within the [CBA] because it is remote controlled." (Doc. 50 at 10)

As defendant points out, the term "craft jurisdiction" is not used in the CBA. Paragraph 4, which defines jurisdiction, does not include this equipment. Nor is it listed elsewhere in the CBA. Plaintiff does not establish how Brokk equipment is "like equipment within the jurisdiction assigned to the Union by the American Federal of Labor." Defendant points out that there is no evidence regarding what equipment may or may not be assigned by the American Federation of Labor.  In its own motion, plaintiff asserts that "like" means equipment not specifically named in Paragraph 4 but similar to equipment identified therein. In that regard, plaintiff asserts that Brokk equipment is like Shovels and Hoes. In its brief opposing defendant's motion, plaintiff asserts the Brokk equipment is like cranes, concrete pump trucks, and excavators and, therefore, contemplated by the CBA as like equipment within the Union's craft jurisdiction. But, plaintiff's representative testified that Brokk equipment is different from an excavator because it is robotically operated and not operated by a person sitting in a cab. This is why it cannot use the same classification and rate of pay as an excavator. (Dalton depo. 74-75) That representative also testified that the Brokk equipment is different from a hoe because the former is operated by remote control. (*Id.* 71) Additionally, as defendant points out, plaintiff's assertion that concrete pump trucks and cranes have remote-controlled counterparts which are separately identified in Exhibit A is not supported where there is no separate classification or identification for such.

Plaintiff also relies on the 1990 memorandum from the parent organization IOUE and

15

refers to the practices of KT-Grant.  However, whether the parent union considered the equipment within its jurisdiction is not determinative as to whether it is within Local 18's jurisdiction. Additionally, defendant notes that KT-Grant is not a signatory to this CBA and does not appear to work in the heavy highway industry.

Next, to demonstrate that the Brokk equipment was "used" by an Employer, plaintiff contends that it has been used by OCA contractors who have employed Union members to operate it. Plaintiff asserts that McNally-Kiewit, an OCA signatory contractor, assigned Union members to operate the Brokk equipment. But, defendant points out that the CBA defines Employer as "All members of the Labor Relations Division of the Ohio Contractors Association, and any person, firm or corporation who as an Employer becomes signatory to this Agreement..."  Thus, plaintiff's reference to OCA Contractors or OCA Signatory Contractors does not establish use by an Employer.  Plaintiff states that McNally Kiewit is an OCA Signatory Contractor, but the evidence shows that McNally-Kiewit is not a member of the OCA or a member of the Labor Relations Division of the OCA.  (Potnick aff. ¶ 5) Nor is it a signatory to the current CBA at issue here.  (*Id.* ¶ 6) It signed a "short form agreement" with the Union which does not contain all the terms in the CBA.  (Dalton depo. 96-97) The Court agrees with defendant that while McNally Kiewit could be held liable to the Union for breach of the short form agreement, the OCA cannot be held liable for breach of the CBA by actions of a non-member. For these reasons, McNally Kiewit is not an Employer.  Plaintiff also asserts that OCA contractors Midwest Mole and George Gradel have assigned Brokk machines to Union members. Midwest Mole and George Gradel are not members of the Labor Relations Division of the OCA. (Potnick aff. ¶ 4; Potnick depo. 116) Moreover, the evidence plaintiff relies on does not actually

16

show that Brokk equipment was "used by an Employer."  Plaintiff submits "letters of assignment" by these two entities stating that the equipment[8] falls within the jurisdiction of the Union and assign the operation of the equipment to Union members. (Dalton aff. Exs. K, L)  But, a letter of assignment is not the same as evidence that the equipment has in fact been "used." Additionally, as noted by defendant, if the Union already believed that the Brokk equipment was within its jurisdiction under the CBA, it would not have been necessary to procure the letters of assignment. Finally, plaintiff asserts that subsequent to the filing of its Complaint, the Union discovered that OCA member Independence Excavating had utilized operating engineers to run Brokk equipment.  But, defendant cannot be held liable for breach of contract when the facts allegedly requiring the OCA to negotiate and arbitrate did not yet exist at the time the OCA refused to negotiate and arbitrate.

The evidence does not demonstrate that the equipment was used by an Employer.

Lastly, it is not disputed that there is not an appropriate classification for the Brokk equipment in the CBA.  However, the Union's argument that the Brokk equipment is "nearly identical" to and "like" a hoe would seem to render the Union's request to meet and negotiate a classification and rate of pay unnecessary because "Hoes (all types)" are already listed in Exhibit A. It would be appropriate to utilize the classification and rate of pay in the CBA for Hoes (all types). In fact, the Union's acknowledgment that the Brokk equipment is not included in the same classification as "Hoes (all types)" renders faulty its prior argument that Brokk equipment is in the jurisdiction of the Union because it is like a hoe.

---

[8] The Midwest Mole letter refers to Brokk equipment while the Gradel letter refers to "remote controlled excavators." (Dalton aff. Exs. K, L) The Union requested the letters of assignment. (Doc. 49 at 13)

For these reasons, plaintiff does not demonstrate that defendant violated the CBA by not complying with plaintiff's request to meet and negotiate pursuant to Paragraph 30.

Paragraph 108 outlines the grievance and arbitration procedure under the CBA. Having found that the specific provision of Paragraph 30 did not compel arbitration because the requirements were not met, the Court finds that plaintiff's claim that defendant breached the contract by failing to arbitrate under Paragraph 108 fails as well. Having found that the specific provision was not met, the Court will not compel arbitration under the more general provision. Further, as defendant points out, Paragraph 108 sets forth the grievance procedures beginning with the aggrieved employee.  But plaintiff does not dispute that it did not file a grievance over the Brokk equipment, but invoked Paragraph 30.

**Conclusion**

For these reasons, defendant's Motion for Summary Judgment is granted and plaintiff's Motion for Summary Judgment is denied.

IT IS SO ORDERED.

           /s/ Patricia A. Gaughan
          PATRICIA A. GAUGHAN
          United States District Judge

Dated: 2/17/16